U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

SEP 0 8 2008

LAWRENCE K. BAERMAN, CLERK
ALBANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**VOLKSWAGEN AG**, a German corporation, and
**VOLKSWAGEN GROUP OF AMERICA, INC.**,
a New Jersey corporation,

                *Plaintiffs*,

   v.

**V.W. PARTS, INC.**, a New York corporation,
**ONLINE AUCTION SERVICES, LLC**, a New
York limited liability company, **WILLIAM
HRAZANEK**, an individual and Chief Executive
Officer of V.W. Parts, Inc., **TOM SHAMRO**, an
individual and co-principal of Online Auction
Services, LLC, and **MICHELLE SHAMRO**, an
individual and co-principal of Online Auction
Services,

                *Defendants*.

[~~PROPOSED~~] **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Civil Action No. 3:08-cv-820
(TJM/DEP)

## I.  INTRODUCTION

This matter is before the Court on plaintiffs Volkswagen AG's and Volkswagen Group of America, Inc.'s (collectively "VW") Motion for Preliminary Injunction [Docket No. 10] pursuant to Federal Rule of Civil Procedure 65 seeking an order preliminarily enjoining Defendants V.W. Parts, Inc., Online Auction Services, LLC, William Hrazanek, Tom Shamro, and Michelle Shamro (collectively "Defendants") from (1) using VW's world-famous VW® trademark in business names such as "VW Parts" and "800 VW PARTS," in domain names such as *800vwparts.com* and *vwpartsinc.com*, and vanity telephone numbers such as 800-VWPARTS, (2) from displaying VW's world famous design trademarks or logos, including VW's world famous VW EMBLEM® and trade dress in their advertising, and (3) from otherwise using VW's trademarks to mislead consumers into believing that Defendants' business is part of VW's authorized dealer network or otherwise associated with VW.

In its Verified Complaint [Docket No. 1], VW alleges claims for trademark infringement,

- 1 -

trademark dilution, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(c), and 1125(a), domain name cyberpiracy under the Lanham Act, 15 U.S.C. § 1125(d), and common law trademark infringement.

Defendants have not appeared in this action and did not submit any opposition to VW's Motion, despite being duly served with, among other things, the Verified Complaint and the Motion for Preliminary Injunction. [*See* Docket Nos. 12-16.]

## II.    VW HAS SATISFIED THE STANDARDS FOR ISSUANCE OF A PRELIMINARY INJUNCTION

Upon review of the submissions of VW in support of its Motion, and consideration of the evidence and the applicable legal standards set forth in *Kadant, Inc. v. Seeley Machine, Inc.*, 244 F. Supp. 2d 19, 26 (N.D.N.Y. 2003) and *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir. 1985), the Court now enters this Order granting VW's Motion, and finds and concludes as follows:

1.    VW has demonstrated a likelihood of irreparable harm if the preliminary injunction is not granted; and

2.    VW has demonstrated both a likelihood of success on the merits of its claims, and that the balance of the hardships tipping decidedly in its favor.

Preliminary injunctions are routinely entered in cases involving trademark infringement or dilution because irreparable harm to the goodwill and reputation of the trademark owner is presumed to follow from the consumer confusion that actionable trademark infringement entails. *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (holding that likelihood of confusion will give rise to presumption of irreparable harm). "A likelihood of dilution also establishes irreparable harm under 43(c)." *Id.* (citing *Deere & Co. v. MTD Prods. Inc.*, 860 F. Supp 113, 122 (S.D.N.Y. 1994) *aff'd* 41 F.3d 39 (2d Cir. 1994).

### III. VW IS LIKELY TO SUCCEED ON ITS TRADEMARK INFRINGEMENT CLAIMS

The VW trademarks are registered trademarks that have become "incontestable," since they have been registered for well over five years. Thus, the protectability of the VW trademarks is established as a matter of law. *See Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 534-35 (2d Cir. 2005) (under 15 U.S.C. § 1065, "a registered mark in continuous use for a five-year period is presumptively valid"). Moreover, circuit courts have ruled that the VW trademarks are famous and well-known trademarks. *E.g., Au-Tomotive Gold v. Volkswagen of America*, 457 F.3d 1062, 1064 & n.2 (9th Cir. 2006) ("Volkswagen and Audi are manufacturers of automobiles, parts and accessories that bear well-known trademarks, including the names Volkswagen, . . . the encircled VW logo, and the names of individual car models. The marks are registered in the United States and have been in use since the 1950's."); *Virtual Works v. Volkswagen of America, et al.*, 238 F.3d 264, 271 ("There is also no dispute that the VW mark is famous.").

The likelihood of consumer confusion is also indisputable. Courts have long embraced a presumption of consumer confusion where (as here) the defendant uses a precise copy of a famous trademark in a business that is closely related to the plaintiff's. *E.g., Mobil Oil Corp. v. Pegausus Petroleum Corp.*, 818 F.2d 254, 258-59 (2d Cir. 1987). "[T]he crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source [or sponsorship] of the goods in question." *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004). In other words, the question in this case is whether consumers are likely to believe that an auto parts and service retailer that uses precise copies of the VW trademarks is sponsored by or affiliated with VW.

The likelihood of such confusion can be presumed under these circumstances as a matter of law. "Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586 (2d Cir. 1993). In this case, there can be no doubt that Defendants intentionally copied the VW trademarks. Such intent can

be inferred from Defendants' "'actual or constructive knowledge' of the prior user's mark"; where "such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred," the courts "have upheld findings of bad faith." *Id.* at 587 (citing *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 246-47 (2d Cir. 1983)); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987). Here the similarities are more than "strong"; the marks used by Defendants are precise copies of the VW trademarks. Defendants, moreover, had more than "constructive knowledge" of the VW trademarks; they were warned repeatedly of VW's claims for infringement of its trademarks, and their persistent misappropriation of those marks can only be seen as a deliberate, bad faith attempt to copy them. That bad faith copying sustains a presumption of confusion.

Indeed, the courts consistently have held that the use of an auto manufacturer's trademark in the trade name of an associated business constitutes infringement and leads to customer confusion. *See Porsche Cars North America, Inc. v. Manny's Porshop, Inc.*, 972 F. Supp. 1128, 1131 (N.D. Ill. 1997) ("'Courts have repeatedly held . . . repair shops to be guilty of trademark infringement and unfair competition where . . . such establishments use or imitate the manufacturer's name or mark in their trade names.'") (quoting *Dr. Ing. h.c.F. Porsche AG v. Zim*, 481 F. Supp. 1247, 1250 (N.D. Tex. 1979)); *Volkswagen Aktiengesellschaft v. Karadizian*, 170 U.S.P.Q. 565, 567 (C.D. Cal. 1971) (holding that the use of the trade name "Volkswagen Village" in a business that sold cars, parts, and accessories infringed Volkswagen's trademark rights).

The law is also well settled that Defendants may not use the VW trademarks in vanity numbers such as 800-VWPARTS. *E.g., American Airlines, Inc. v. A 1-800-A-M-E-R-I-C-A-N Corp.*, 622 F. Supp. 673 (N.D. Ill. 1985) (vanity number 800-AMERICAN infringed American Airlines' trademarks); *Multi-Local Media, et al. v.800 Yellow Book, Inc.*, 813 F. Supp. 199 (E.D.N.Y. 1993) (preliminarily enjoining use of 800-YELLOWBOOK); *Kelley Blue Book v. Car-Smarts*, 802 F. Supp 278 (C.D. Cal. 1992) (enjoining 800-BLUEBOOK).

The law is also well settled that Defendants are barred from misappropriating the VW EMBLEM® in any manner. *See, e.g., Volkswagen AG v. Uptown Motors*, 1995 WL 605605 (S.D.N.Y. 1995) (awarding VW $221,000.00 in damages as measured by service center's

revenues during unauthorized display of VW EMBLEM® and AUDI RINGS® trademarks); *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) (enjoining unauthorized use of manufacturer's "bar-and-shield" logo in signage and in advertisements); *Harley-Davidson Motor Co. v. Iron Eagle of Central Florida, Inc.*, 973 F. Supp. 1421 (M.D. Fla. 1997) (enjoining use of "winged logo" in advertisements and signage).

Finally, the law also well-established that automobile manufacturers have protectable trade dress rights in the distinctive shapes of images of their automobiles. *See, e.g., Liquid Glass Enters., Inc., v. Porsche AG*, 8 F. Supp. 2d 398, 402 (D.N.J. 1998) (enjoining use of photographs of Porsche 911 automobile in advertisements); *Volkswagen AG v. Rickard*, 492 F.2d 474 (5th Cir. 1974) (affirming injunction barring, among other things, defendant service shop's use of "any silhouette, picture, caricature, or reproduction of the shape or appearance of the Volkswagen sedan"); *Volkswagen AG v. Smith*, 471 F. Supp. 385 (D.C.N.M. 1979) (finding "Volkswagen Silhouette has been synonymous in meaning with 'Volkswagen'") (emphasis added).

In short, Defendants' extensive use of the VW® name, VW EMBLEM®, and trade dress creates the confusing impression that Defendants operate an authorized business that is licensed by VW.

## IV.    VW IS LIKELY TO SUCCEED ON ITS TRADEMARK DILUTION CLAIMS

Under the Trademark Dilution Revision Act ("TDRA"), "the owner of a famous mark . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). "The TDRA's establishment of a 'likelihood of dilution' standard rejects the 'actual dilution' standard set out by the Supreme Court in *Moseley v. v. Secret Catalogue, Inc.*

[537 U.S. 418, 433 (2003)]." *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 307 (S.D.N.Y. 2007).

The undisputed facts clearly establish the famousness of the VW trademarks. "The TDRA sets out four factors that courts may use in 'determining whether a mark possesses the requisite degree of recognition' to be considered 'famous'": "'[1] [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; [2] [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; [3] [t]he extent of actual recognition of the mark; [4] [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.'" *Id.* (quoting 15 U.S.C. § 1125(c)(2)(A)).

There is ample undisputed evidence of the famousness of the VW trademarks. First, as noted above, the VW trademarks have long been registered on the principal register – for long enough that they have become incontestable. Second, the famousness of the VW trademarks has been fortified by a multi-million dollar world-wide marketing campaign and case law. *E.g.*, *Au-Tomotive Gold v. Volkswagen of America*, 457 F.3d 1062, 1064 & n.2 (9th Cir. 2006) ("Volkswagen and Audi are manufacturers of automobiles, parts and accessories that bear well-known trademarks, including the names Volkswagen, . . . the encircled VW logo, and the names of individual car models. The marks are registered in the United States and have been in use since the 1950's."). Thus, the "duration, extent, and geographic reach" of VW's "advertising and publicity," 15 U.S.C. § 1125(c)(2)(A), could hardly be more expansive. Third, the "amount, volume, and geographic extent of sales" of goods under the VW trademarks is also undisputed. Finally, as to the "extent of actual recognition" of the VW trademarks, it bears repeating that the

courts repeatedly have held that these trademarks are famous. *See Au-Tomotive Gold*, 457 F.3d at 1076; *Virtual Works*, 238 F.3d at 271.

It is also undisputed that Defendants have diluted the VW trademarks. In the Second Circuit, "the commercial use of an identical junior mark . . . constitutes circumstantial evidence of the ***actual-dilution*** element" of a dilution claim. *Savin*, 391 F.3d at 452 (emphasis added). Thus, proof that the junior mark is "identical" to the senior mark is "per se evidence of ***actual dilution***." *Id*. (emphasis added). Since VW has established "actual dilution," it has easily met the lower "likelihood of dilution" standard under the TDRA.

## V.     VW IS LIKELY TO SUCCEED ON ITS CYBERPIRACY CLAIM

Under *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir. 2000), the cyberpiracy claim has three elements: (1) that the VW® trademark is distinctive or famous; (2) that the domain names at issue are confusingly similar to the VW® mark; and (3) that the domain name was registered, trafficked in, or used with a bad faith intent to profit from the VW® mark. *Id.* at 497-99. The first two elements overlap with the elements of VW's other claims, and are established for reasons discussed above. Thus, the key element under the cyberpiracy claim is whether Defendants acted in bad faith in its registration or use of the domain names.

At least six of the factors under 15 U.S.C. § 1125(d)(1)(B)(i) weigh in favor of a finding of bad faith. Defendants have no "trademark or other intellectual property rights" in the domain names *800v-w-parts.com, 800vwparts.com, vwpartsinc.com*, and *vwconversion.com* (I); the domain names do not consist of Defendants' legal surname (II); Defendants have not used the domain names "in connection with the bona fide offering of any goods or services" (III); Defendants have attempted to "divert consumers" from VW's official website at VW.COM "by

creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site" (V); and the VW® mark is "distinctive and famous" (IX).

A finding of bad faith is also confirmed by a case involving VW's sister company, Audi. *Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006). In that case, the Sixth Circuit sustained summary judgment in Audi's favor on cyberpiracy claim arising out of the defendant's registration of the AUDISPORT.COM domain name. *See id.* at 548-49. The defendant in the *D'Amato* case had no trademark rights in the AUDI® name, had misappropriated the FOUR RING LOGO® on its website, and had used the website to sell merchandise and email addresses bearing the Audi name. *See id.* at 549. The same conclusions are appropriate here. Defendants' bad faith is evident for all of the reasons noted in *D'Amato*.

## VI.   PRELIMINARY INJUNCTION

Accordingly, it is hereby **ORDERED,** that Defendants and their respective employees, agents, successors and assigns, and all those in active concert and participation with them, are hereby preliminarily enjoined from the following:

> (a)   any use of any simulation, reproduction, counterfeit, copy, or colorable imitation of the VOLKSWAGEN®, VW® or VW EMBLEM® trademarks, in any manner, except that Defendants may use the trademark Volkswagen® in the context of a fair and factual statement to the effect that "We service or sell parts for Volkswagen® vehicles" provided that the trademark Volkswagen® is not be highlighted in any manner through the use of larger style, distinctive typographical style or script, color, shading, setting, placement or otherwise;
>
> (b)   any use of the trade names "VW Parts, Inc.," "V.W. Parts, Inc.," "800VWPARTS," "800V-W-PARTS," or any other variation of the trademarks

    VOLKSWAGEN® or VW®, including, but not limited to, as a business name, vanity telephone number, Internet domain name, or otherwise;

(c) any use of the words "VW" or "VW Parts" in answering the Defendants' telephone, in the Defendants' telephone directory advertisements, in email addresses, or in any other manner;

(d) any use of the domain names *800vwparts.com, 800v-w-parts.com, vwconversion.com, vwpartsinc.com,* or any other domain name that incorporates the trademarks VOLKSWAGEN®, or VW® or any variation of these trademarks; and/or

(e) any use of other trade names, business names, Internet domain names, or vanity telephone numbers that incorporate or use any U.S. registered trademark owned by VW or any of the trademarks or names enjoined in this paragraph.

It is further **ORDERED**, that the Defendants and their respective employees, agents, successors and assigns, and all those in active concert and participation with them, are hereby preliminarily enjoined from instructing, assisting, aiding or abetting any other persons or business entities in engaging in or performing any of the activities referred in the foregoing section.

It is further **ORDERED**, that Defendants shall, within 10 days of the entry of this Order, direct any registrar with which such domain names are registered to preliminarily transfer to Volkswagen Group of America, Inc., pending further Order of this Court, any and all domain names in the Defendants' possession and/or control that incorporate any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the trademarks or names enjoined in the foregoing section.

It is further **ORDERED** that this preliminary injunction shall remain in full force and effect without bond until the trial of this matter, or until such time as this Court specifically orders otherwise

**IT IS SO ORDERED.**

Dated: Sept. 8, 2008
Binghamton, New York

Hon. Thomas J. McAvoy
Senior United States District Judge